UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THE CITY OF EAST PROVIDENCE,      :
                    Plaintiff,    :
                                  :
          v.                      :          CA 10-199 ML
                                  :
FIRST AMERICAN TITLE              :
INSURANCE COMPANY,                :
                    Defendant.    :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

    Before the Court are cross-motions for summary judgment filed
by the City of East Providence ("Plaintiff" or "the City") and
First American Title Insurance Company ("Defendant" or "First
American").  The motions have been referred to me for preliminary
review, findings, and recommended disposition pursuant to 28 U.S.C.
§ 636(b)(1)(B).

    After reviewing the filings, listening to oral argument, and
performing independent research, I recommend that the City of East
Providence's Motion for Summary Judgment (Docket ("Dkt.") #15)
("City's Motion") be denied and that Defendant's Motion for Summary
Judgment (Dkt. #16) ("Defendant's Motion") be granted.  I further
recommend that judgment be entered in favor of Defendant as to its
counterclaim and that this Court declare that the claim asserted by
the City is not covered under the terms of the policies and that
Defendant has not breached its obligations to the City.

## I.  Facts and Travel

This is a declaratory judgment action concerning the scope of coverage afforded by two title insurance policies issued by First American.  In 2003, GeoNova Development Company, LLC ("GeoNova"), was interested in remediating and redeveloping several waterfront parcels in East Providence which had formerly been the Ocean State Steel facility ("the Property").  Agreed Statement of Facts (Dkt. #17) ("ASF") ¶¶ 3-4.  GeoNova held the right to purchase the Property from its then owner, PIMAG Aktiengesellschaft ("PIMAG"), and sought assistance from the City in securing the necessary financing.  ASF ¶ 4.  In furtherance of the project, the City sought and obtained from the U.S. Department of Housing and Urban Development ("HUD") a $2 million grant and a $3 million loan for the project.  ASF ¶ 5.  In order to structure this transaction to HUD's satisfaction, HUD required that the City be the owner of the Property.  Id.  To comply with this requirement GeoNova assigned its right to purchase the Property to the City, ASF, Exhibit ("Ex.") 10 (GeoNova Complaint) ¶¶ 14-15, and on June 13, 2003, PIMAG transferred fee simple ownership of the Property to the City pursuant to a warranty deed, ASF ¶ 6.

The City and GeoNova entered into a series of agreements pertaining to the Property, and at a closing held on September 26, 2003, they executed documents relating those agreements.  ASF ¶ 7. The agreements included: a) a Development and Financing Agreement;

b) a Promissory Note for $3 million made by GeoNova and payable to the order of the City; and c) a Fixed Rate Note for Series 2003-A Certificates under which the City was obliged to repay the loan to JP Morgan Chase Bank. Id. In addition, the City: 1) made a conditional grant to GeoNova of the $2 million HUD grant as reflected in the Development and Financing Agreement; 2) leased the Property to GeoNova under the terms of a Ground Lease;[1] 3) took back a Leasehold Mortgage and Security Agreement under which the City was granted a security interest in GeoNova's interest in the Property to secure GeoNova's obligation to repay the $3 million HUD loan from the City; and 4) executed a Declaration of Covenants, Conditions and Restrictions outlining various issues related to the transaction. Id.

The Development and Financing Agreement included eight exhibits which sought to define the business relationship between the City and GeoNova. ASF ¶ 7a; ASF, Ex. 2 (Development and Financing Agreement). In this document, the City agreed to "acquire title to the Property as nominee for GeoNova subject to all applicable provisions hereof ...." ASF, Ex. 2 at 12.[2] In

---

[1] The parties also executed a Memorandum of Ground Lease for recording purposes. Agreed Statement of Facts (Docket ("Dkt.") #17) ("ASF") ¶ 7d.

[2] The Court cites to the Development and Financing Agreement (ASF, Ex. 2) by page number rather than by section number because it speeds location of the cited material. The quotation appears in ¶ 9(a) of the Development and Financing Agreement.
Except for the Development and Financing Agreement, all

exchange for the City's acquisition of the Property and its assistance with the financing of the project, GeoNova committed itself to various obligations, including the creation of a certain number of jobs, deadlines for remediation and development, and repayment of loans. ASF, Ex. 2 at 15-16, 19-20. Among the deadlines, GeoNova was given a five year period (to September of 2008) within which to complete the development of 75,000 square feet of commercial space and to create at least 145 permanent jobs at the Property. ASF ¶ 9. Upon GeoNova's satisfaction of its various obligations, the City agreed to transfer title to the Property to GeoNova in piecemeal fashion, as provided in the documents. ASF, Ex. 2 at 13-15. In the event of GeoNova's default, all obligations on the part of the City to advance monies ended, and it had the right to, *inter alia*, demand immediate full payment of GeoNova's Note, foreclose on the leasehold interest in the Property that GeoNova received at the time of the closing, enter upon the Property and complete the work in whatever fashion it deemed appropriate, or to abandon the project altogether – all at the City's sole election. Id., Ex. 2 at 28.

In connection with the execution of the September 26, 2003, agreements between the City and GeoNova, First American issued a Commitment through its wholly owned subsidiary, Mortgage Guarantee

---

documents pertaining to the transaction reflect that the City was to be the owner of the Property in fee simple.

& Title Company and two policies of title insurances (the "Policies") to the City. ASF ¶ 8. GeoNova defaulted on its obligations. ASF ¶ 10. It created no jobs, it built nothing on the Property, and it failed to make payments to the City as required. Id. It also failed to pay its remediation contractor more than $1.7 million. Id.

On February 26, 2009, the City served notice of default on GeoNova, and on June 18, 2009, the City served GeoNova with a Notice of Termination of its Ground Lease. ASF ¶ 11. In response, and despite its multiple defaults, GeoNova filed suit against the City in September of 2009, claiming to be the beneficial owner of the Property. ASF ¶ 12. At or about the same time it filed suit, GeoNova also filed a *lis pendens* against the Property which is still of record. ASF ¶ 13. The City filed an answer and counterclaim in response to the GeoNova lawsuit and asserted therein, *inter alia*, that the City holds the fee simple title to the Property and that GeoNova, by virtue of its multiple defaults, holds no interest whatsoever in the Property. ASF ¶ 14.

In a December 9, 2009, letter to First American, the City asserted that First American was obligated under the terms of the Policies to defend and indemnify the City in the litigation brought by GeoNova. ASF ¶ 15. First American responded to this assertion on February 4, 2010, and refused to provide coverage on the ground that the claims made by GeoNova in the suit were excluded from

coverage by the terms of the Policies.  ASF ¶ 16.  The City then brought this action for declaratory judgment and bad faith against First American in the Providence Superior Court.  ASF ¶ 18.  First American removed the action to this Court on April 30, 2010.  <u>See</u> Notice of Removal (Dkt. #1).

On May 25, 2010, First American filed an answer denying that it was obligated to provide coverage to the City for the claims asserted in the GeoNova lawsuit and a counterclaim seeking a declaratory judgment to that effect.  <u>See</u> Defendant's Answer and Counterclaim (Dkt. #3).  By agreement, the Court granted First American's motion to sever and stay the bad faith claim pending determination of the coverage claim.  ASF ¶ 20.

A hearing on the cross-motions for summary judgment was held on June 22, 2011.  Thereafter, the Court took the matters under advisement.

## II.  Summary Judgment Standard

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  <u>Commercial Union Ins. Co. v. Pesante</u>, 459 F.3d 34, 37 (1st Cir. 2006)(quoting Fed. R. Civ. P. 56)); <u>accord</u> <u>Kearney v. Town of Wareham</u>, 316 F.3d 18, 21 (1st Cir. 2002).  "A dispute is genuine if the evidence about the fact is

such that a reasonable jury could resolve the point in the favor of the non-moving party.  A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)(quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)(citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)).  "[T]he standards are the same where, as here, both parties have moved for summary judgment." Pacific Ins. Co. v. Eaton Vance Mgmt., 369 F.3d 584, 588 (1st Cir. 2004)(quoting Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002)(citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720, at 335-36 (3d ed. 1998)("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard."))); see also Specialty Nat'l Ins. Co. v. OneBeacon Ins. Co., 486 F.3d 727, 732 (1st Cir. 2007)("The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review.")(quoting Mandel v. Boston Phoenix, Inc., 456

F.3d 198, 205 (1st Cir. 2006)).

The non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial. See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 53 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505 (1986)). "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002)(quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993)) (alteration in original)(internal quotation marks omitted).

"[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." Gannon v. Narragansett Elec. Co., 777 F. Supp. 167, 169

(D.R.I. 1991)(citation and internal quotation marks omitted).

## III.  Discussion[3]

### A.  Resolution of Disputed Issue

The City contends that because GeoNova alleges in its lawsuit that title to the Property is "vested other than as stated" in the Policies, First American is required to defend and indemnify the City against the claims asserted by GeoNova.[4]  City of East

---

[3] The parties make essentially the same arguments with regard to their own motion and their objection to the other party's motion.  Accordingly, the Court discusses the motions together, keeping in mind that it must, "on an individual and separate basis, determin[e], for each side, whether a judgment may be entered in accordance with the Rule 56 standard."  10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and Procedure § 2720, at 335-36 (3d ed. 1998).

[4] GeoNova makes the following allegations in its complaint regarding title to the Property:

> 12.  At all times it was expressly agreed and understood that the City would hold title to the ... Property solely as nominee for GeoNova so that the City could obtain the required HUD financing.  See [Development and Financing Agreement] at Sec. 9A.
>
> ...
>
> 17.  Neither GeoNova nor the City ever agreed or intended that the City beneficially own the ... Property; rather it was always understood, agreed and intended that the City would be solely the record or nominee holder of title to the ... Property.
>
> 18.  It was always intended, understood and agreed that the City would hold record title to the ... Property as nominee for GeoNova and that GeoNova was, and would always continue to be, the equitable owner of the ... Property.

ASF, Ex. 10 (GeoNova's Complaint).

Providence's Memorandum in Support of Motion for Summary Judgment ("City's Motion Mem.") at 3 (quoting ASF, Ex. 6 (Owner's Policy); ASF, Ex. 7 (Loan Policy) at 1). The City further contends that the only reason First American cited in its February 4, 2010, letter for refusing to provide coverage was a single exclusion in the Policies for "adverse claims or other matters ... created, suffered, assumed or agreed to by the insured claimant ...." City's Motion Mem. at 3 (quoting ASF, Ex. 14 (Letter from Deeney to Briden of 2/4/10)). First American, however, maintains that in addition to this exclusion, the February 4th letter also advised that there was no coverage for claims based on an alleged breach of contract. See Defendant's Memorandum in Support of Its Objection to Plaintiff's Motion for Summary Judgment ("Defendant's Objection Mem.") at 5.

The Court finds that the letter supports First American's position. In relevant part, it states:

> A policy of title insurance is a contract of indemnity against actual loss arising as a result of an insured matter and subject to Exclusions from Coverage, Exceptions listed in Schedule B and Conditions and Stipulations in the policy. *The litigation filed against the City of East Providence is simply a breach of contract claim. Such claims fall outside the purview of coverage under the owner's policy of title insurance.*
>
> Assuming, *arguendo*, that coverage is implicated due to

the fact that the contract's[5] subject matter deals with the ownership of the insured property, the claims are excluded from coverage pursuant to Exclusion 3 in the policies.

ASF, Ex. 14 at 1 (italics added).

Thus, to the extent the City contends that First American based its refusal to provide coverage on a single exclusion, the City's argument is rejected. First American refused coverage on the grounds that (1) the claim being made by the City falls outside the purview of the coverage provided by the Policies and (2) even if the claim implicated that coverage, the claim is excluded pursuant to Exclusion 3 of the Policies.

**B.  Scope of Coverage**

First American argues that the Policies do not cover breach of contract claims[6] and that GeoNova's complaint, while styled as

---

[5] It is clear from earlier paragraphs of the letter that the contract is the Development and Financing Agreement between the City and GeoNova.

[6] In support of this contention, First American quotes the language of the Policies as to what the Company insures:

1.  Title to the estate or interest described in Schedule A       being vested other than as stated therein;

2.  Any defect in or lien or encumbrance on the title;

3.  Unmarketability of the title;

4.  Lack of a right of access to and from the land.

Defendant's Memorandum in Support of Its Motion for Summary Judgment ("Defendant's Motion Mem.") at 9 (quoting ASF, Ex. 6 (Owner's Policy); ASF, Ex. 7 (Loan Policy) at 1).

a declaratory judgment action revolving around who has title to the Property, "is nothing more than a dispute between the City and GeoNova about who has and has not breached the many contracts between them." Defendant's Memorandum in Support of Its Motion for Summary Judgment ("Defendant's Motion Mem.") at 9. The Court agrees.

The contractual nature of the dispute between the City and GeoNova is demonstrated by the relief which GeoNova seeks. GeoNova requests, among other relief, that the state superior court construe the Development and Financing Agreement, declare that GeoNova is not in default of that agreement or any of the other operative documents, declare that the City's purported termination of the Ground Lease is null and void, and declare that "the City is required to work with GeoNova and HUD to comply with the terms of the Block Grant and Loan Guaranty, including the creation of the HUD 108 Jobs and any extensions that be required to meet that condition, or other conditions, of the Agreement." ASF, Ex. 10 ¶ 27. GeoNova additionally requests that the court declare that the City has breached the covenant of good faith and fair dealing in the Development and Financing Agreement. ASF ¶ 31. None of GeoNova's claims can be decided without the court determining whether GeoNova has breached the contracts. Further evidence of the contractual nature of the dispute between the City and GeoNova is found in the City's counterclaim which asserts claims for breach

of contract (Count I), indemnification from GeoNova (Count II), and slander of title (Count III). <u>See</u> ASF, Ex. 12 (City of East Providence's Answer and Counterclaims).

First American argues, and the Court agrees, that by its very nature, GeoNova's claim of an interest in the Property adverse to the City has its beginning and end in the documents executed between them — not in anything recorded in the chain of title to the Property. <u>See</u> Defendant's Motion Mem. at 10. There is no allegation by either the City or GeoNova that there is a defect of any kind in the chain of title to the Property. <u>See</u> <u>id.</u> GeoNova does not challenge the warranty deed whereby the City acquired title to the Property in fee simple – without restriction or reservation as to the estate or interest. <u>See</u> <u>id.</u> GeoNova asserts instead that contractual provisions between the City and GeoNova executed after the deed altered the plain and unambiguous meaning of that document and conveyed rights to GeoNova that do not appear in the title to the Property. <u>See</u> <u>id.</u>

The Court also agrees with First American that the filing of a *lis pendens* long after the issuance of the Policies does not, in and of itself, create a title defect. <u>See</u> <u>id.</u> This is especially true in this case where the *lis pendens* evidences a dispute between the parties originating from the actions and non-actions of the parties themselves occurring in the years following the closing — the point at which title to the Property was insured. <u>See</u> <u>id.</u>

13

It is generally recognized that title insurance does not insure against prospective risks. <u>Am. Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.</u>, 793 F.2d 780, 781 (6th Cir. 1986).

> [T]itle insurance operates to protect a purchaser or mortgagee against defects in or encumbrances on title which are in existence at the time the insured takes his title. It is not prospective in its operation and has no relation to liens or requirements arising thereafter. The risks of title insurance end where the risks of other kinds begin. Title insurance, instead of protecting the insured against matters that may arise during a stated period after the issuance of the policy[,] is designed to save him harmless from any loss through defects, liens, or encumbrances that may affect or burden his title when he takes it.

<u>Id.</u> at 781-82 (first alteration in original)(internal citations and quotation marks omitted).

Accordingly, I find that the lawsuit filed by GeoNova is, at its core, a claim for breach of contract and that breach of contract claims are not covered by the Policies. Therefore, the City's Motion should be denied and Defendant's Motion should be granted. I so recommend. In addition, I recommend that judgment be entered in favor of First American as to its counterclaim and that the Court declare that the claim asserted by the City is not covered under the terms of the Policies and that First American has not breached its obligations to the City.

## C. Exclusion from Coverage

Even if the claims asserted by GeoNova somehow fell within the scope of the coverage provided by the Policies, I find that the claims are excluded by the Policies' exception for defects

"created, suffered, assumed or agreed to by the insured claimant."
ASF ¶ 17.   In making this finding, the Court is cognizant that
where an insurance company seeks to deny coverage under a policy
exclusion, the insurance company carries the burden of proving that
the exclusion applies.   <u>Am. Title Ins. Co. v. East West Fin.</u>, 16
F.3d 449, 455 (1st Cir. 1994); <u>cf.</u> <u>Nat'l Credit Union Admin. v.</u>
<u>Ticor Title Ins. Co.</u>, 873 F.Supp. 718, 726 (D. Mass. 1995)(stating
that title insurance company has the burden of establishing the
applicability of the exclusion).   The Court also bears in mind that
exclusionary clauses which are subject to more than one
interpretation are to be construed in the manner most favorable to
the insured, <u>Am. Title Ins. Co. v. East West Fin.</u>, 16 F.3d at 455
(citing <u>Bartlett v. Amica Mut. Ins. Co.</u>, 593 A.2d 45, 48 (R.I.
1991)), and the general principle that insurance contract
provisions subject to more than one interpretation are construed
strictly against the insurer, <u>id.</u> (citing <u>Sentry Ins. Co. v.</u>
<u>Grenga</u>, 556 A.2d 998, 999 (R.I. 1989)).

The exclusion in the Policies states:

The following matters are expressly excluded from the
coverage of this policy and the Company will not pay loss
or damage, costs, attorneys' fees or expenses which arise
by reason of:

....

3. adverse claims or other matters:

(a)   created, suffered, assumed or agreed to by
the insured claimant.

15

ASF ¶ 17.

The First Circuit interpreted this clause in <u>American Title</u> <u>Insurance Co. v. East West Financial</u>, 16 F.3d 449 (1st Cir. 1994):

> Although Rhode Island courts have not interpreted this clause, courts in other jurisdictions have generally held that the insurer can escape liability only if it is established that the defect, lien or encumbrance resulted from some intentional misconduct or inequitable dealings by the insured *or the insured either expressly or impliedly assumed or agreed to the defects or encumbrances*.

<u>Id.</u> at 455 (italics added)(internal quotation marks omitted); <u>see also</u> <u>First Am. Title Ins. Co. v. Action Acquisitions, LLC</u>, 187 P.3d 1107, 1113 (Ariz. 2008)("Arizona's court of appeals and courts across the country have held that an insured creates a defect or a risk by acting affirmatively to bring it about.").

In finding that a similarly worded exclusion excluded coverage, the Arizona Supreme Court explained:

> Considering the nature of title insurance, we conclude that the exclusion is not ambiguous and that it applies whenever the insured intended the act causing the defect, not only when the insured intended the defect or when the insured engaged in misconduct. *Title insurance principally protects against unknown and unknowable risks caused by third-party conduct, not intentional acts of the policyholder.* Otherwise, the insured would be able to use title insurance to make windfall profits.

<u>First Am. Title Ins. Co.</u>, 187 P.3d at 1113 (italics added).

In <u>Transamerica Title Insurance Co. v. Alaska Federal Savings</u> <u>& Loan Association of Juneau</u>, 833 F.2d 775 (9th Cir. 1987), the Ninth Circuit found that the claims at issue fell "within the 'created or suffered' exception because if [the insured] intended

16

to obtain [only] a security interest[,] it 'created' the 'defect'
in its title." Id. at 776.  While the factual exposition in the
opinion is minimal, the rationale for the decision is reasonably
clear.  The Ninth Circuit held that the title insurance company did
not have a duty to defend the insured in three state court actions
because the claims in those actions depended on the insured's
intent and, if the insured "intended to obtain only an equitable
lien ... [it] will be deemed to have 'created' this 'defect' in
title." Transamerica Title Ins. Co., 833 F.2d at 776.  Similarly
here, the success of GeoNova's claims depends in large measure on
the City's intent in agreeing to "acquire title to the Property as
nominee for GeoNova ...." ASF, Ex. 2 ¶ 9(a).  By agreeing to this
language, the City "created" the "defect" on which GeoNova relies
for its claim.

    As First American persuasively argues, GeoNova has asserted
that strictly as a consequence of the agreements between GeoNova
and the City, coupled with the intentions of the parties to the
agreements, the City only obtained "record" title, strictly as
GeoNova's nominee, and not equitable or beneficial title.
Defendant's Motion Mem. at 16.  Indeed, GeoNova alleges in
paragraph 18 of its complaint that "[i]t was always intended,
understood and agreed that the City would hold record title to the
... Property as nominee for GeoNova and that GeoNova was, and would
always continue to be, the equitable or beneficial owner of the ...

Property." Id. (quoting ASF, Ex. 10 ¶ 18). While the City denies

this allegation, any proof of these claims between GeoNova and the

City will necessarily involve a determination of the intent of the

City when it entered into the transaction with GeoNova and

executed the series of agreements to effectuate it. Defendant's

Motion Mem. at 16 (citing Transamerica Title Ins. Co.). Thus, as

in Transamerica Title Insurance Co., the only way that GeoNova can

succeed on its claim is to prove that the City intended for GeoNova

to be the equitable and beneficial owner of the Property while the

City held virtually meaningless "record" (i.e., "paper") title –

presumably as an elaborate fiction solely to satisfy HUD. Id. at

16-17. The Court agrees with First American that the claimed title

defect exists only as created by or agreed to by the City. Id. at

17.

    The Court further agrees with First American that:

> Fundamentally, the City, here, is saying to First
> American: "We understood that we held beneficial title to
> the Property and, if we did not, then that is a defect in
> title." However, this defect can only have come about
> because that is what the City contracted for and
> intended. ... There can be no doubt that the City
> intended the act of entering into the contracts that it
> signed and of entering into this transaction. While the
> City argues that it did not intend for the end result to
> be a defect in its title, this is immaterial for the
> exclusion to apply.

Defendant's Motion Mem. at 17.

    Like the Arizona Supreme Court in First American Title

Insurance Co., this Court concludes that the exclusion "applies

18

whenever the insured intended the act causing the defect ....”
First Am. Title Ins. Co., 187 P.3d at 1113. Here the City
intentionally signed the Development and Financing Agreement by
which agreed to “acquire title to the Property as nominee for
GeoNova subject to all applicable provisions hereof ....” ASF, Ex.
2 ¶ 9(a). It is that act which gives rise to GeoNova’s claim.
Thus, the City “expressly or impliedly assumed or agreed to the
defects or encumbrances.” Am. Title Ins. Co., 16 F.3d at 455.

The City argues that it never agreed and never intended that
GeoNova would be the beneficial owner of the Property (or that the
City would hold title only as nominee). The City of East
Providence’s Memorandum in Support of Objection to First American
Title Insurance Company’s Motion for Summary Judgment (“City’s
Objection Mem.”) at 4. However, for the exclusion to apply, it is
not necessary that the City intended the defect. See First Am.
Title Ins. Co., 187 P.3d at 1113 (“the exclusion ... applies
whenever the insured intended the act causing the defect, not only
when the insured intended the defect ....”). All that is
necessary is that the City intend the act giving rise to the defect
(or providing the basis for the claim being made against its
title). Here the City entered into the Development and Financing
Agreement which includes the language on which GeoNova relies in
support of its claims for breach of contract. Thus, as in First
American Title Insurance Co., “the risk in this case resulted from

the insured's intentional acts."  187 P.3d at 1113 n.1.

The City notes that some courts which have found that the "suffered" or "agreed" exclusion applies have done so in order to avoid a windfall profit to the insured.  See City's Objection Mem. at 3 (citing First Am. Title Ins. Co., 187 P.3d at 1113); see also Am. Sav. & Loan Ass'n v. Lawyers Title Ins. Corp., 793 F.2d at 784 ("To the extent that an insured has breached an obligation or would derive a windfall profit from recovery against its insurer, courts are more inclined to find that the insured created, suffered, assumed or agreed to the defect, lien or encumbrance.").  Here, the City asserts "there is no suggestion of any windfall to the City. Quite the contrary -- the City remains on the hook for repayment of the $3.0 million HUD loan."  City's Objection Mem. at 3.  However, the City wants First American to pay its legal expenses in defending against the GeoNova lawsuit, a lawsuit which arises out of a complicated business transaction[7] involving millions of dollars into which the City knowingly and voluntarily entered.  In effect, the City seeks to make First American an insurer of a risk inherent in the business transaction, namely that a dispute between the parties could arise regarding the performance of their obligations under the various agreements into which they entered. It would be a windfall for the City to have its legal fees paid by

_____

    [7]  The City describes it as "a complex real estate transaction ...."  City's Motion Mem. at 2.

First American when GeoNova's claim is that the City has breached its contractual obligations.

The purpose of title insurance is to protect a purchaser of real estate against title surprises. <u>Citicorp Sav. of Ill. v. Stewart Title Guar. Co.</u>, 840 F.2d 526, 529 (7th Cir. 1988); <u>Nourachi v. First Am. Title Ins. Co.</u>, 44 So.3d 602, 606 (Fla. Dist. Ct. App. 2010); <u>see also</u> <u>Mansur v. Sec. Search & Abstract Co. of Phila., Inc.</u>, Civ. A. No. 95-1585, 1995 WL 365401, at *1 (E.D. Pa. June 13, 1995)("The purpose of title insurance is to protect the insured ... from loss arising from defects in the title which he acquires.")(quoting <u>Hicks v. Saboe</u>, 555 A.2d 1241, 1243 (Pa. 1983)) (alteration in original). First American was not insuring the City against the possibility that problems might arise in the course of a complex business transaction with GeoNova and that litigation might result from those problems. Rather, First American was insuring that as of September 29, 2003, the date the Policies were issued, the City had good title to the Property. ASF, Ex. 6, Schedule A; ASF, Ex. 7, Schedule A.

While First American could satisfy itself through title searches that the City had good title in the Property when it issued the Policies, First American could not know whether the multiple agreements which the City and GeoNova had made between themselves would be performed as required or whether litigation would result in future years because of an alleged failure by

either or both parties to perform.  Cf. Am. Sav. & Loan Ass'n v. Lawyers Title Ins. Corp., 793 F.2d at 786 ("the insurer would have been in the unenviable position of insuring against events over which the insured had responsibility and control").

The City argues that the nature of the transaction was known to First American from the outset because "[t]he commitment for the title insurance issued in connection with the closing makes specific reference to the documents mentioned above [ASF ¶] 8 ...." City's Motion Mem. at 2.  However, the commitment for title insurance, ASF, Ex. 5, is more than sixty pages in length, and the print on some pages is very small.  The City has not provided a pinpoint citation as to where in Ex. 5 the reference to the Development and Financing Agreement appears, and the Court's cursory review of that exhibit has not located such a reference. Thus, to the extent that the City contends that First American had knowledge of the Development and Financing Agreement when the Policies were issued, such fact is not apparent from the materials which the City cites in its memorandum in support of its Motion.

Even if First American had notice of the Development and Financing Agreement, the provision in that agreement on which GeoNova primarily relies for its lawsuit, ¶ 9(a), is reasonably understood to concern events happening in the future, i.e., after "compliance by GeoNova with all terms, conditions and requirements of this Agreement and the Operative Documents," ASF, Ex. 2 at 12,

and "subject to all applicable provisions hereof," id. Thus, any problem in the City's title to the Property stems not from a defect in the title as it existed on September 29, 2003, when the Policies were issued, but rather from a dispute between the City and GeoNova regarding the subsequent performance of their mutual obligations under the Development and Financing Agreement and other documents. For that reason, the excerpt from American Savings & Loan Association, which this Court has already reproduced, see Discussion Section III. B. supra at 13-14, is again on point and bears re-emphasizing.

## Conclusion

For the reasons explained above, I recommend that the City's Motion be denied and that Defendant's Motion be granted. I further recommend that judgment be entered in favor of Defendant as to its counterclaim and that this Court declare that the claim asserted by the City is not covered under the terms of the Policies and that Defendant has not breached its obligations to the City.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor

<u>Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


**/s/ David L. Martin**
DAVID L. MARTIN
United States Magistrate Judge
October 13, 2011